UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Davon William Jenkins, | ) | C/A No. 5:15-cv-03398-HMH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Officer Palmer, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Davon William Jenkins ("Plaintiff"), a pro se prisoner, brings this action alleging claims pursuant to 42 U.S.C. § 1983. This matter is before the court on Defendant's Motion for Summary Judgment, filed on January 21, 2016. ECF No. 32. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on January 22, 2016, the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's Motion. ECF No. 35. Plaintiff failed to respond to the Motion for Summary Judgment by the court's deadline and the court ordered Plaintiff to advise whether he wished to proceed with his case. ECF No. 38. Plaintiff moved for an extension of time to respond, which the court granted. ECF Nos. 41, 42. On May 2, 2016, Plaintiff filed a Response in Opposition to Defendant's Motion, ECF No. 44.[1] This Motion is now ripe for consideration.

I.   Background

Plaintiff is presently confined at the Florence County Detention Center ("FCDC") in Effingham, South Carolina, awaiting trial on attempted murder charges. Compl. 2, ECF No.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. Because Defendant's Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

1.[2] In his Complaint, Plaintiff alleges that Defendant was deliberately indifferent to his safety and to his medical care. *Id.* at 3-4. Specifically, Plaintiff alleged that on June 23, 2015, Defendant, who was escorting him, did not prevent him from injuring himself when Plaintiff slipped and fell while descending stairs at FCDC and while shackled at the hands and feet ("the June 23rd slip and fall incident"). *Id.* at 3. Using the word "they" frequently, Plaintiff alleged that Defendant Palmer and perhaps other unnamed individuals placed him on "bed rest" and "forced [him] to get up." *Id.* Plaintiff alleged that he told them, "I hurt and I couldn't walk," but that they "forced" him to his feet and escorted him to his room and then made him walk while shackled to medical even though he was in pain. *Id.* at 4. Plaintiff further alleged that he was examined by the doctor, his legs were "checked," he was prescribed medicine, and was made to walk back to his room. Plaintiff alleged that he was treated in a cruel and unusual manner from the time of the June 23rd slip and fall incident until July 24, 2015. *Id.* Plaintiff stated that he wanted "to sue . . . Officer Palmer . . . ," but the only clearly requested relief in the Complaint is release on "a personal recognizance bond . . . ." *Id.* at 5.[3] In his Response to Defendant's Motion for Summary Judgment Plaintiff asserts for the first time that he seeks "compensation" from Defendant in the "sum of $150,000 U.S.A. dollars . . . ." ECF Nos. 44 at 7; 44-1 at 2.

II.     Standard of Review

---

[2] Available court records show that an attempted murder case is currently pending. http://publicindex.sccourts.org/Florence/PublicIndex/CaseDetails.aspx?County=21&CourtAgency=21001&Casenum=2015A2110100327&CaseType=C (last consulted May 4, 2016) (publicly available on-line records from the Florence County Clerk of Court).

[3] This court cannot grant the relief requested relative to Plaintiff's bond. To do so would require interference with the pending state criminal action against him and would violate the holding in *Younger v. Harris*, 401 U.S. 37 (1971) and *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 50-53 (4th Cir. 1989).

2

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477

U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.   Analysis

The undersigned notes that the only two plausible causes of action that Plaintiff raised against Defendant in his Complaint are for deliberate indifference to his health and safety and for deliberate indifference to medical needs. In the following sections, the undersigned will address both of these claims in light of the pending Motion for Summary Judgment.

   A.   Deliberate Indifference to Health and Safety

      1.   The Parties' Contentions

Defendant contends that Plaintiff's § 1983 claim of indifference to inmate health or safety is barred because "Plaintiff cannot show that Defendant Palmer intentionally harmed him or failed to protect him from harm." ECF No. 32-1 at 6. Defendant contends that the affidavit and FCDC records he produced show that he tried to steady Plaintiff when he "stumbled," that he reported the incident quickly, that Plaintiff was escorted by a different officer to medical within an hour of the incident, and that Plaintiff did not suffer any injury from the incident. *Id*. In Response, Plaintiff argues that Defendant was deliberately indifferent by contributing to his ankle, leg, and back injuries when he grabbed him by the arm to prevent a fall, by not contacting medical staff quickly enough, and by forcing him to walk to get to medical and to obtain his food and medicine at his cell door while he was on total bed rest. ECF No. 44 at 1-5. Plaintiff disputes Defendant's version of the facts of the July 23rd slip and fall incident and asserts that "Defendant Palmer makes up false statements and he tells lies under oath. You can't believe nothing he says he will do anything to get

himself off this civil suit." *Id*. at 7. Further, Plaintiff states that he has proof "from the camera and also witnesses that were in Max Ed at the time." *Id*.

### 2.      Applicable law

To establish a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must satisfy two elements. First, the deprivation alleged must be, objectively, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks and citation omitted). Second, a prisoner must present evidence that the prison officials had a "'sufficiently culpable state of mind.'" *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson,* 501 U.S. at 297). When an inmate challenges the conditions of his confinement under the Eighth Amendment, the requisite "state of mind is one of deliberate indifference to inmate health or safety." *Id.* (quotation and citation omitted). A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the

harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety." *Id.* at 844 (internal quotation marks omitted). As a pretrial detainee, Plaintiff's claims are controlled by the Fourteenth Amendment; however, courts have routinely held that "the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (applying Eighth Amendment analysis in a conditions-of-confinement case filed by a state pre-trial detainee); *see, e.g., Fennell v. Williams*, No. 1:09-2429-RBH-SVH, 2011 WL 251464, at * 4 (D.S.C. Jan. 5, 2011) (applying deliberate indifference standard to detainee's claims about conditions of confinement); *Chisolm v. Cannon*, No. 4:02–3473–RBH, 2006 WL 361375, at *3 (D.S.C. Feb.15, 2006) (same). For this reason, the standards discussed in *Farmer v. Brennan* are equally applicable in Plaintiff's case.

      3.     Discussion

In support of his Motion, Defendant attaches his own affidavit. ECF No. 32-2. There, Defendant attests that on June 23, 2015, he was "leading" Plaintiff down stairs from the second floor to the first floor at FCDC, holding onto Plaintiff's right arm when Plaintiff "lost control of his footing" and "stumbled" on the stairs. *Id*. at 1. Defendant further avers that he "grabbed" Plaintiff's right arm to keep him from falling and that Plaintiff stated "my ankle hurts a little but I am fine." *Id*. According to Defendant, he reported the incident "about nine minutes later" to the shift sergeant and "within the hour" a different officer, Officer Jennings, escorted Plaintiff "to medical to be accessed." *Id*. Defendant states that Plaintiff was moved to a lower level cell, was placed on total bed rest, and was placed on a thirty minute medical watch until he could be seen by a doctor. Defendant attests that Plaintiff was seen three hours later standing on the sink in his cell and was told to get down whereupon he said, "'There is

6

no need to worry about going to the doctor since they have already seen me walking up there and they are not going to do anything now.'" *Id*. Defendant further avers that after Plaintiff was seen by medical, he was placed on total bed rest and was "kept on medical watch for several months." *Id*. Defendant states that he is not in charge of medical care and that he did not deny medical treatment to Plaintiff. According to Defendant, he "requested medical assess [Plaintiff] even after he told me he was fine." *Id*. at 2. The medical records, medical watch logs, and incident reports were attached to Defendant's affidavit and are included as attachments to Defendant's Motion for Summary Judgment. ECF Nos. 32-3; 32-4; 32-5; 33; 34.

Defendant attaches to his Motion the Incident Report that was prepared based on his statement. ECF No. 32-3. There, Defendant indicated that while he was escorting Plaintiff down the stairs and holding him "by his right arm for support," Plaintiff "lost control of his footing on one of the steps." *Id*. at 2. Defendant also indicated that he "secured [Plaintiff's] right arm to prevent him from falling." *Id*. According to the incident report, Plaintiff "did not fall" and told Defendant, "my ankle hurts a little but I am fine." *Id*. The incident report also contains a statement that a different officer, Officer Jennings, escorted Plaintiff to medical approximately twenty-five minutes after the incident and Plaintiff was then moved to a different cell and "placed on a thirty minute medical watch and total bed rest until seen by the doctor." *Id*. The incident report concludes with an additional comment from Defendant to the effect that Plaintiff asked "if I don't ask to see the doctor can I get off bed rest" and a statement that, after the June 23rd slip and fall incident, Plaintiff was seen "standing on his sink talking through the vent . . . ." *Id*. According to Defendant, when Plaintiff got off the

7

sink, he stated," no need to worry about going to see the doctor they already see me walking up there they not going to anything now." *Id*.

Defendant also attaches copies of FCDC medical reports from the period of June 23, 2015 through August 20, 2015, showing that on the day of the incident and three days later Plaintiff complained of ankle and back pain and was prescribed 800 mg. of Ibuprofen and placed on bed rest. ECF Nos. 32-4 at 1-3, 32-5 at 1. On June 26, 2015, the treating physician's assessment was that he thought Plaintiff was "putting on." *Id*. at 3. On June 29, 2015, the records show that Plaintiff continued to complain of back and right leg pain, but that the examination showed "no obvious injury" and "no bruising no swell." The report indicates that Plaintiff also "has full range of motion," but remained on bed rest. There was also an indication that Plaintiff asked for a walker. ECF No. 32-5 at 3. On June 30, 2015, an x-ray was authorized and performed on July 1, 2015. ECF No. 32-5 at 5. The x-ray showed a "[n]ormal lumbar spine . . . ." ECF No. 32-4 at 6. Plaintiff refused to come to medical on July 6, 2015, but continued to complain of leg and back pain with improvement during a medical visit on July 7, 2015. The nurse noted that Plaintiff said he did not know if he could walk up the stairs for visitation and that she observed "a normal gait" during the medical visit. ECF No. 32-5 at 7-8. The records show that during a medical encounter for "follow up of back pain" on July 22, 2015 when questioned about his back and leg pain, Plaintiff said "it's still a little sore but I'm maintaining." The report notes "no further treatment at this time." *Id*. at 12. The medical reports end on July 25, 2014 with a notation that Plaintiff "refused BP Meds on 7/24/14." *Id*. at 14. Defendant also attaches reports from the medical department showing that Plaintiff was taking 800 mg. of Motrin from June 24, 2015 through July 22, 2015. ECF No. 32-6. The medical log reports also attached to the Motion show that from June 23, 2015

through July 15, 2015 Plaintiff was on "total bed rest" through July 11, 2015 and his movements were monitored approximately every thirty minutes by corrections officers including Defendant. The logs show that Plaintiff exhibited significant standing and movement in his cell and outside of it during the monitored period, and the logs note that Plaintiff was "taken off watch" on July 17, 2015. ECF No. 33.[4]

Here, Plaintiff has failed to present any evidence to the court in form of testimony, affidavits, or otherwise. Rather, Plaintiff is relying only on the allegations contained in his Complaint, apparently as supplemented by additional allegations in the Response. Although he asserts that camera footage and witnesses support his allegations, Plaintiff does not present any footage or witness affidavits as attachments to his Response. Thus, other than through Plaintiff's own, self-serving and unsupported allegations, there is no indication on this record that Defendant intentionally harmed Plaintiff during or after the alleged June 23 slip and fall incident. Furthermore, there is no indication from the evidence before the court that Defendant played any part in the medical care that Plaintiff received other than, perhaps, issuing an initial report of the June 23rd slip and fall incident to his superiors, which report set in motion the initial medical examination. The FCDC records and Defendant's affidavit show that, instead of being deliberately indifferent, Defendant attempted to protect Plaintiff

---

[4] It appears that Plaintiff had been off total bed rest for five days and was just being monitored by medical during those days. ECF No. 33 at 20-25. There are additional records covering another period of total bed rest from August 18, 2015 through August 24, 2015 and further medical monitoring September 3, 2015 through October 3, 2015, *id*. at 26-30, ECF Nos. 33-1 at 1-33; 34 at 1-42; however, Plaintiff specifically denies that he is seeking compensation or other relief for any period of confinement except from the June 23rd slip and fall incident through approximately July 7, 2015 or "the middle of July" when Plaintiff says he was released from total bed rest. ECF Nos. 44 at 6; 44-1 at 3. Plaintiff indicates that a separate fall he had on August 20, 2015 "had nothing to do with the June 23, 2015 incident at all." ECF No. 44 at 6. As a result, the undersigned has not reviewed the medical documentation for the period after July 2015.

from being hurt more by holding his arm to prevent him from falling down the stairs. Additionally, even though Plaintiff did not exhibit serious injury and verbally minimized ankle pain to him, Defendant promptly reported the slip and fall incident to his superiors and so began the process of obtaining any medical care that Plaintiff required. The fact that Plaintiff might have preferred to be transported to the medical department by wheelchair or that he suffered some discomfort by having to walk from the scene of the slip and fall incident to his cell and then to the medical department does not change the fact that Defendant did all he was professionally required to do to protect Plaintiff's health and safety during and in the aftermath of the June 23rd slip and fall incident.

As previously noted, in his Response, Plaintiff states that he has proof in the form of camera footage and testimony from "witnesses that were in Max Ed at the time" of allegedly harmful actions by Defendant such as forcing Plaintiff to walk despite his alleged pain subsequent to the June 23rd slip and fall incident, but he does not attach any such proof to his Response and he has not otherwise presented any such evidence to the court. It is Plaintiff's burden to produce some evidence that would create a genuine issue of material fact in order to survive summary judgment. *See Baber v. Hosp. Corp. of Am,* 977 F.2d 872, 875 (4th Cir. 1992) (citing *Celotex,* 477 U.S. at 324) ("As previously discussed, Plaintiff must submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial."); *see, e.g.*, *Huff v. Outlaw,* No. 9:09-cv-00520-RBH, 2010 WL 1433470, at *2 (Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."); *Askins v. Belissary*, No. 4:12-CV-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014) *aff'd*, 564 F. App'x 46 (4th Cir. 2014) (emphasis in original)

(referencing Fed. R. Civ. P. 56(c), (e)). Here, Plaintiff has failed to offer any evidence of deliberate indifference and Defendant's evidence disproves any such indifference.

At best, it appears Plaintiff is alleging that Defendant acted negligently -- allegations that are insufficient to support claims of Eighth Amendment/Fourteenth Amendment violations.[5] *See Farmer,* 511 U.S. at 837; *see also Hill v. Green*, No. 08-CV-13852, 2010 WL 786555, at *3 (E.D. Mich. Mar. 9, 2010). Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 345-48 (1986); *Ruefly v. Landon,* 825 F.2d 792, 798-94 (4th Cir. 1987); *Pink v. Lester,* 52 F.3d 73, 78 (4th Cir. 1995). Furthermore, many courts, including this one, have refused to find deliberate indifference to inmate safety in the context of slips and falls during incarceration. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (prison officials who negligently left pillow in stairwell, causing inmate to slip and fall, did not "deprive" him of protected interests within the meaning of the Fourteenth Amendment due process clause); *Beasley v. Anderson*, 67 F. App'x 242, 242 (5th Cir. 2003) (finding prisoner's claim that he slipped and fell on slippery shower floor sounded in negligence and was insufficient to allege a constitutional violation); *Aiken v. Colleton Cnty. Det. Cen.*, No. 8:12-cv-00205-JFA-JDA 2012 WL 4100122, at *4 (Aug. 6, 2012) ("slip and fall cases articulate state law tort claims at best"), *report and recommendation adopted*, 2012 WL 4104789 (D.S.C. Sept. 18, 2012); *Snyder v. Blankenship*, 473 F. Supp. 1208, 1212-13 (W.D. Va. 1979) ("The mere fortuity that the accident occurred in a prison does not vest [a prisoner]with a right to federal adjudication of what is essentially a state common law tort claim, and petitioner's allegation of a slip and fall incident makes out nothing more than a common law tort.").

---

[5] The undersigned offers no opinion on the potential success of a negligence claim if Plaintiff were to pursue such an action.

Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be granted as to Plaintiff's claim of a Fourteenth Amendment violation arising from indifference to inmate health and safety.

### C. Medical Indifference

#### 1. The Parties' Contentions

Defendant contends that Plaintiff cannot show that he was deliberately indifferent to Plaintiff's medical needs, primarily because Defendant had no personal involvement in the medical care that was provided and, alternatively, because Plaintiff received a reasonable amount of medical care for any injury that he received as a result of the June 23rd slip and fall incident. ECF No. 32-1 at 6-7. Plaintiff responds that Defendant should have called "EMS or medical attention" following the incident instead of forcing him to walk to his cell and to the medical area of the detention center. Plaintiff also asserts that Defendant should have brought his medication and food to his bed instead of making him walk to the door to get it. ECF No. 44 at 1-5. Plaintiff further contends that Dr. Miller did not fully examine him and improperly refused him a walker and placed him on total bed rest so that he could not see his family and tell them about his injury. Plaintiff also states that the x-ray that was taken was "not accurate" because the machine that was used to take his x-ray was "out of date" and it did not x-ray his whole body. *Id.* at 5.

#### 2. Applicable Law

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. at 832-35; *Wilson v. Seiter,* 501 U.S. at 297; *Estelle v. Gamble*,

429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Additionally, to state a plausible § 1983 claim against any particular public official, a "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). A plaintiff suing a government official in his individual capacity and thereby seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right complained of. *See Graham*, 473 U.S. at 166.

      3.    Discussion

Defendant avers that, as a corrections officer, he has no responsibility for the provision of medical care at FCDC. ECF No. 32-2 at 2. Defendant states that he contacts "medical for inmate injuries or sick call requests by inmates," but that "[t]he medical department performs all medical and nursing assessments and makes all decisions regarding

treatment." *Id*. Defendant further avers that he has "no authority to alter the medical treatment prescribed by medical" and that he never denied any medical treatment to Plaintiff. *Id*. Although Plaintiff alleges that Defendant unreasonably delayed summoning medical care for him after the June 23rd slip and fall incident, he does not present any competent proof to support these allegations and the evidence that has been provided indicates that Plaintiff was examined in the FCDC medical department within thirty minutes of the incident. While Plaintiff further alleges that Defendant made him walk in pain to the door of his cell to obtain his medication, those allegations are not supported by any competent proof and the record shows no difference between medication rounds or medical observations that Defendant participated in and those performed by other corrections officers. Thus, even if there is sufficient proof of some peripheral involvement by Defendant with the provision of medication to Plaintiff, there is no proof that Defendant exerted any control over what medication was provided or over any other aspect of the medical care that Plaintiff received. Simply put, there is no proof of the required level of personal involvement by this Defendant in FCDC's provision of medical care, nor has Plaintiff offered any evidence that would support a finding that he suffered any serious injury as a result of Defendant intentionally or recklessly disregarding his needs or delaying his treatment from the results of the June 23rd slip and fall incident. Rather, the record before the court demonstrates that Plaintiff was consistently treated for his alleged leg and back pain and was given pain medication and placed on total bedrest by the FCDC physician and consistently monitored by other medical staff and corrections officers. The fact that Plaintiff might have preferred different or additional treatment raises, at most, a medical malpractice claim against a person or persons not named as defendants in this case. *See Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir.

14

1988)[6]

Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be granted on Plaintiff's claim of medical indifference.

D.     Qualified Immunity

Defendant asserts that he is entitled to qualified immunity if his conduct is deemed unconstitutional. ECF No. 32-1 at 8. Plaintiff does not respond to this assertion. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the

---

[6] Medical malpractice is a not covered under § 1983 and such a claim is not properly before this court in absence of diversity of citizenship between the parties. *See Cianbro Corp. v. Jeffcoat & Martin*, 804 F. Supp. 784, 788-91 (D.S.C. 1992); *see also Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (§ 1983 does not cover negligence claims).

case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. As previously noted, Defendant did not transgress any of Plaintiff's statutory or constitutional rights that he was aware of in the exercise of his respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant be granted qualified immunity.

E.      Eleventh Amendment Immunity

Defendant argues that Plaintiff's § 1983 claims against Defendant in his official capacity are barred pursuant to the Eleventh Amendment. ECF No. 32-1 at 9. Plaintiff does not respond to this argument. As an employee of either the Sheriff of Florence County or of Florence County, a detention center officer such as Defendant is considered an "arm of the state." *See Pennington v. Kershaw Cty., S.C.*, No. 3:12-1509-JFA-SVH, 2013 WL 2423120, at *4 (D.S.C. June 4, 2013) (citing S.C. Code Ann. § 4-1-10 and applying the Eleventh Amendment to a county as "a political subdivision of the State"); *Cone v. Nettles*, 417 S.E.2d 523, 525 (S.C. 1992) (employees of a county Sheriff are state officials).

The United States Supreme Court and the Fourth Circuit have held that suits against state actors acting in their official capacities are suits against the State. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Weller*, 901 F.2d at 398. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case, S.C. Code Ann. § 15-78-20(e), and, as an arm of the State, Defendant, in his official capacity, is immune from suit under the Eleventh Amendment.

Accordingly, the undersigned recommends that Plaintiff's claims against Defendant in his official capacity be dismissed.

F.    State Law Claims

Defendant also raises the issue of immunity under the South Carolina Torts Claim Act and argues that he is entitled to "any and all defenses available to him" under that Act. ECF No. 32-1 at 9. Defendant contends that he is entitled to summary judgment on any state law claims based on his position on the federal claims, but, alternatively, he asks this court to decline to exercise its supplemental jurisdiction over any potential state law claims. *Id*. at 10. Assuming that Plaintiff's § 1983 claims are dismissed by this court and Plaintiffs' Complaint can be construed to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim or claims, if any, ought to be dismissed as well for want of jurisdiction. Specifically, this court can decline to continue the action as to the

17

pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Accordingly, it is recommended that the court not exercise supplementary jurisdiction in this case.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 32, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

May 6, 2016                                                                                          Kaymani D. West
Florence, South Carolina                                                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).